UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                :
KELLY ANN LINDSEY,              :    CASE NO. 1:16-cv-2728
                                :
         Plaintiff,             :
                                :
    vs.                         :    OPINION & ORDER
                                :    [Resolving Docs. 16, 17]
COMMISSIONER OF SOCIAL          :
SECURITY,                       :
                                :
         Defendant.             :
                                :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Kelly Lindsey objects to the Magistrate Judge's Report and Recommendation (R&R) recommending the affirmance of an Administrative Law Judge's ("ALJ") decision denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").[1] Lindsey asks this Court to reject the R&R and remand the case for further proceedings.

For the reasons stated below, the Court **OVERRULES** Lindsey's objections, **ADOPTS** the Magistrate Judge's Recommendation, and **DISMISSES** Lindsey's complaint.

## I. BACKGROUND

### A. Lindsey's First Application for SSI and DIB

This is Lindsey's second application for SSI and DIB. She filed her first application in November 2011.[2] After her claims were denied, a hearing was held before an ALJ.[3] The ALJ ultimately determined that Lindsey suffered from five severe impairments that had "more than a minimal effect on" her "ability to perform basic work activities."[4] Those impairments were:

---

[1] Doc. 17.
[2] Doc. 11 at 99.
[3] *Id.*
[4] *Id.* at 102.

Case No. 1:16-CV-2728
Gwin, J.

degenerative disc disease, sprains and strains, affective disorders, anxiety, and diabetes.[5] The ALJ also found that Lindsey suffered from hypertension, but classified that disorder as "slight" because her blood pressure was well controlled with medication.[6]

After concluding that Lindsey did suffer from several severe impairments, the ALJ evaluated her residual work capacity. He concluded that she was able to perform light work, except that she could:

> [not] lift or carry 20 pounds occasionally and 10 pounds frequently; stand or walk 6 hours out of 8 hours; sit 6 hours out of 8 hours; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl; must avoid concentrated exposure to hazards such as unprotected heights; can perform tasks in a setting with no fast pace, where she is allowed to take infrequent extra breaks, and no more than infrequent changes; occasionally interact with supervisors and coworkers; and never interact with the public.[7]

In reaching that conclusion, the ALJ relied on evidence showing that Lindsey's degenerative disc disease and sprains and strains—while they did cause her some pain—were not so severe that it prevented her from working.[8] For example, the ALJ noted that she took only Tylenol and Ibuprofen for the pain and Flexeril to relax her muscles, and that she walked daily to stay active.[9]

The ALJ also found that Lindsey's diabetes appeared relatively stable and that any neuropathy stemming from that disease did not appear to be severe.[10]

As to Lindsey's mental health, the ALJ noted that Lindsey had a history of depression and panic attacks.[11] But he also emphasized that she admitted that her panic attacks were only

---

[5] *Id.*
[6] *Id.*
[7] *Id.* at 104.
[8] *See id.* at 104–05.
[9] *Id.* at 105.
[10] *Id.*
[11] *Id.*

occasional, had gone to counseling only a few times, and demonstrated no problems speaking.[12] The ALJ pointed to several examinations from 2013 that indicated that Lindsey had a "normal mood without anxiety or depression and no panic attacks."[13]

The ALJ also found that Lindsey's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible."[14]

Finally, the ALJ relied on the opinions of several medical and psychological consultants, who opined that (1) Lindsey has the ability to perform light work with some limitations; (2) faced only mild restrictions on her daily activities; (3) experienced moderate difficulties maintaining social functioning; and (4) would experience mild difficulties in maintaining concentration, persistence or pace.[15]

The ALJ concluded that, based on her impairments, Lindsey could not continue her work as a nurse's aide.[16] Based on the testimony of a vocational expert, however, the ALJ found that there were jobs existing in significant numbers in the national economy that Lindsey could perform.[17] In particular, he found that she could work as a "unit clerk", "re-use technician," or "sterilizer."[18] As a result, he concluded on November 27, 2013, that Lindsey was not disabled and, therefore, was not eligible for SSI or DIB.[19]

**B. Lindsey's Second Application for SSI and DIB**

The record shows that Lindsey conferred with a number of professionals about her physical and psychological condition around the time she was initially denied benefits and afterwards. She

---

[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.* at 105–06.
[16] *Id.* at 107.
[17] *Id.*
[18] *Id.* at 107–08.
[19] *Id.* at 108.

Case No. 1:16-CV-2728
Gwin, J.

then reapplied for SSI and DIB on February 7, 2014.[20] With regard this application, the ALJ concluded that Lindsey suffered from a number of severe impairments, namely: "insulin-dependent diabetes mellitus, cervical degenerative joint disease, thoracolumbar degenerative disc disease, peripheral neuropathy, and anxiety-related disorder."[21] He also noted that Lindsey suffered from a number of other ailments that he did not classify as severe.[22]

The ALJ ultimately concluded, however, that Lindsey's residual functional capacity had not changed since November 2013.[23] After acknowledging the medical treatment Lindsey had received since the earlier determination, he found that the new evidence did not support "limitations greater than . . . w[ere] previously found."[24]

The ALJ found that Lindsey's testimony about the severity of her conditions was not entirely credible.[25] He noted that she had not complied with the treatment recommended by her physicians and therapists, suggesting either "a possible unwillingness to do that which is necessary to improve her condition" or that "her symptoms are not as severe as she purports" or both[26]

The ALJ also gave considerable weight to the opinions of two state medical consultants and two state psychological consultants that supported the earlier residual capacity determination.[27] He gave no weight to the functional evaluation report completed by Lindsey's therapist.[28]

Based on those findings and the testimony of a vocational expert, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Lindsey] can

---

[20] *Id.* at 16.
[21] *Id.* at 19.
[22] *Id.* at 19–20.
[23] *See id.* at 22–26.
[24] *Id.* at 24.
[25] *Id.*
[26] *Id.* at 25.
[27] *Id.*
[28] *Id.* at 25–26

Case No. 1:16-CV-2728
Gwin, J.

perform."²⁹ In particular, the expert testified that Lindsey could find work as a price marker, laundry aide, or housekeeping cleaner.³⁰ Based on that conclusion, the ALJ denied Lindsey's second claim for benefits.³¹

**C. Appellate History**

The Appeals Council denied Lindsey's request for review.³² She then sought review of the ALJ's order in this Court.³³ She now objects to the Magistrate Judge's recommendation that her complaint be denied.

## II. LEGAL STANDARD

The Court considers *de novo* Plaintiff Lindsey's objections to the Magistrate Judge's Report and Recommendation.³⁴ But it must affirm the decision of the Commissioner unless he has failed to apply the correct legal standards or made findings of fact that are unsupported by substantial evidence in the record.³⁵ "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."³⁶

The Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."³⁷ Indeed, so long as substantial evidence supports the Commissioner's decision, that decision must be affirmed—even if a preponderance of the evidence supports the

---

²⁹ *Id.* at 26.
³⁰ *See id.* at 27.
³¹ *Id.* at 27–28.
³² *Id.* at 5–9.
³³ Doc. 1.
³⁴ 28 U.S.C. § 636(b)(1).
³⁵ *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Because the Appeals Council denied review of Lindsey's claim, the ALJ's decision stands as the final decision of the Commissioner on that claim. *Casey v. Sec'y of Health & Human Servs.*, 897 F.2d 1230, 1233 (6th Cir. 1993).
³⁶ *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)).
³⁷ *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

Case No. 1:16-CV-2728
Gwin, J.

claimant's position.[38]

Moreover, the Court need only review the portions of the Magistrate Judge's Report and Recommendation that Lindsey disputes in her objections.[39] The other portions of the Report may be adopted without review.[40]

### III. DISCUSSION

**A. The *Drummond* Rule**

Plaintiff Lindsey first contends that the Magistrate Judge erred when she concluded that the ALJ properly applied the rule articulated by *Drummond v. Commissioner of Social Security*.[41] In that case, the Sixth Circuit held that principles of res judicata apply to an ALJ's determination that a claimant is not entitled to social security benefits.[42] As a result, "[a]bsent evidence of an [change] in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."[43]

Lindsey argues that she demonstrated a sufficient deterioration in her condition between the original November 2013 ALJ decision and the time of the February 2016 ALJ decision to require the second ALJ to make new determination of her residual functional capacity.[44] She did not.

Lindsey points primarily to a single page of the administrative record to support her contention that her condition had worsened. That page is part of a September 2015 medical report by Dr. Joseph Zayat, a neurologist.[45] In the report, Dr. Zayat notes that Lindsey had some decreased tendon reflexes and had suffered a stroke.[46] But Dr. Zayat *also* reported that she had

---

[38] *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)
[39] 28 U.S.C. § 636(b)(1).
[40] *Thomas v. Arn*, 474 U.S. 140, 149 (1985).
[41] 126 F.3d 837 (6th Cir. 1997).
[42] *Id.* at 841–42.
[43] *See id.* at 842.
[44] *See* Doc. 17 at 1–2.
[45] Doc. 11 at 901–08; Doc. 17 at 1-2.
[46] *See id.* at 904.

-6-

normal muscle tone and showed normal strength and power in her upper and lower extremities.[47] Moreover, Dr. Zayat did not order Lindsey to curtail her activities in any way. He only directed her to take certain medications and keep her vascular risk factors (such as her diabetes) under control.[48] So while some parts of Dr. Zayat's report do suggest some deterioration in Lindsey's medical condition, other parts of the report suggest that the deterioration was not so severe as to meaningfully reduce her ability to work.

Lindsey also suggests that her own testimony at the administrative hearing was sufficient to show a deterioration in her condition.[49] As we discuss below, however, the ALJ had reason to discount her testimony. Moreover, the ALJ was not required to base his determination on her testimony and ignore the other evidence cited in his decision. That other evidence is sufficient to justify the ALJ's decision.

The Court, therefore, cannot overturn the ALJ's conclusion that the November 2013 ALJ decision properly established Lindsey's residual functional capacity.

**B. Failure to Consider Other Ailments**

Lindsey next claims that the Magistrate Judge incorrectly concluded that the ALJ considered her "additional problems with her left shoulder, left hip, major depression, migraine with aura, PTSD, agoraphobia, and stroke" when making his determination.[50] But the ALJ did consider those conditions.

The ALJ explicitly discussed Lindsey's left-shoulder and hip problems, depression, migraine with aura, and "strokelike" symptoms in the course of determining whether Lindsey suffered from severe impairments.[51] In addition, he explicitly mentioned her agoraphobia,

---

[47] *Id.*
[48] *Id.* 904–08.
[49] Doc. 17 at 2.
[50] *Id.*
[51] Doc. 11 at 19.

depression, left hip and shoulder problems in the course of making his RFC determination.[52] The ALJ did not mention her migraines or "strokelike" symptoms again at the RFC stage. But he did say that he considered all of Lindsey's symptoms and clearly understood that he was required to consider all of Lindsey's ailments at the RFC stage, regardless of whether they were classified as severe.[53] As a result, the record indicates that the ALJ did consider all of Lindsey's alleged ailments in the course of making his RFC determination.

It is true that the ALJ did not explicitly consider Dr. Zayat's report, which indicated that Lindsey had a stroke. Instead, the ALJ referred only to another physician's conversation with Dr. Zayat during which Dr. Zayat agreed that Lindsey's presentation was "more strokelike than migrainous."[54] But "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."[55] "Although the ALJ's decision in this case may not be a model of clarity and detail,"[56] it is apparent from the record that—as the Magistrate Judge concluded—the ALJ did consider all the evidence of Lindsey's condition.[57]

**C. Credibility Determinations**

Lindsey also challenges the Magistrate Judge's refusal to overturn the ALJ's credibility determinations as to Lindsey's own testimony at the second administrative hearing and the

---

[52] *Id.* at 22.
[53] *Id.* at 18, 22.
[54] *Id.* at 19, 831–37.
[55] *Loral Def. Sys.-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999) (quoting *NLRB v. Beverly Enters.-Mass., Inc.*, 174 F.3d 13, 26 (1st Cir. 1999)).
[56] *Id.*
[57] Doc. 16 at 33–34. There is also no merit to Lindsey's complaint that, at the severe impairment stage, the ALJ should not have determined that there was no evidence of any of the conditions discussed in this section prior to her date last insured. Doc. 17 at 2. As the Magistrate Judge correctly noted, the ALJ made that finding only as to Lindsey's left shoulder/elbow tendonitis pain. Doc. 11 at 20; Doc. 16 at 34. And even if that finding was erroneous, it would not be grounds for reversal. The ALJ found that Lindsey suffered from other severe ailments and went on to consider her tendonitis at the RFC stage. Doc. 11 at 19–20, 22. Thus, the mere failure to consider Lindsey's tendonitis severe does not amount to reversible error. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Case No. 1:16-CV-2728
Gwin, J.

functional capacity assessment offered by Jennifer Diehl, a physical therapist.[58]

The ALJ gave no weight to Diehl's assessment because it contradicted other evidence in the record.[59] He partially discounted Lindsey's testimony as to the intensity, persistence, and limiting effects of her symptoms because, among other things, Lindsey failed to comply with the treatment prescribed for some of her conditions.[60] That reasoning is supported by the record.[61]

There may also have been evidence in the record that would have supported other credibility findings. But it is not this Court's function to review credibility determinations *de novo*. So long as substantial evidence supported the ALJ's decision, this Court cannot overturn it.[62]

**D. Step Five Determination**

Finally, Lindsey contests the R&R's conclusion that the ALJ properly determined that Lindsey was able to perform jobs that exist in substantial numbers in the national economy.[63] Her main complaint is that, when the additional limitations she believes the ALJ should have found are taken into account, the only job the vocational expert testified she could perform was that of a surveillance system monitor.[64] Because the Court finds no reason to overturn the ALJ's conclusion that those additional limitations do not apply to Lindsey, it need not address that argument.

## IV. CONCLUSION

For all of those reasons, after reviewing *de novo* the record and the ALJ's decision, the Court **OVERRULES** Lindsey's objections, **ADOPTS** the Magistrate Judge's Recommendation,

---

[58] Doc. 17 at 2–3.
[59] Doc. 11 at 25–26. Lindsey also complains that the Magistrate Judge failed to consider that Diehl completed her assessment at the request of Lindsey's other physicians. But she failed to make that argument to the Magistrate Judge, so the Court need not consider it. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000). Even if that were not the case, the Court does not see how the fact that the report was requested by Lindsey's other physicians undermines the basis for the ALJ's credibility determination.
[60] *Id.* at 24–25.
[61] *See e.g. id.* at 858, 863.
[62] *See Jones*, 336 F.3d at 477.
[63] Doc. 17 at 4-5.
[64] *Id.*

Case No. 1:16-CV-2728
Gwin, J.

and **DISMISSES** Lindsey's complaint.

IT IS SO ORDERED.

Dated: October 31, 2017
*s/       James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE